IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**ALEXANDER BLANCO KITANO,**              :
                                                                          :
                          **Petitioner**              :          **CIVIL NO. 1:CV-05-0153**
                                                                          :
            **v.**                                             :          **(Judge Rambo)**
                                                                          :
**JOSEPH SMITH, Warden,** *et al.,*         :
                                                                          :
                          **Respondents**              :

# M E M O R A N D U M

## I.     Introduction

      Petitioner, Alexander Blanco Kitano, an inmate at the United States Penitentiary

in Lewisburg ("USP-Lewisburg"), Pennsylvania, commenced this action *pro se* with a

petition for writ of habeas corpus (Doc. 1).  Respondents are: (1) USP-Lewisburg

Warden, Joseph Smith; (2) the Pennsylvania Attorney General; and (3) the  United

States Attorney for the Middle District of Pennsylvania, Thomas Marino.  Petitioner is

challenging the calculation of his prisoner classification at USP-Lewisburg.

Respondents argue that Petitioner's claims are without merit.  The petition has been

fully briefed, and it is ripe for disposition.  For the following reasons, the petition will

be denied.

II.   **Background**

In June of 1987, Petitioner was serving a fifteen-year prison sentence at the Guam Department of Corrections facility in Mangilao, Guam. (Doc. 4 at 2.) On June 23, 1987, Petitioner and three other inmates planned to stab a correctional officer to death the following day. (*Id*.) In preparation for the murder, Petitioner was given a pocketknife from one of his accomplices. (*Id*.) The next day, on June 24, 1987, when the prisoners were called for lunch, Petitioner and his three accomplices remained as the other prisoners left the cell block. (*Id*.) When Petitioner arrived at the site of the planned murder, the victim was being choked from behind by an accomplice. (*Id*. at 3.) As Petitioner approached, the victim lunged for the knife and struggled briefly with Petitioner. (*Id*.) A second accomplice arrived and took the knife from Petitioner. (*Id*.) The second accomplice proceeded to stab the victim repeatedly in the upper torso, as Petitioner complied with his request to hold the victim's legs. (*Id*.) The following day, Petitioner confessed to prison and state authorities of his involvement in the murder. (*Id*.) Although Petitioner was sentenced to life imprisonment, in exchange for his plea and his agreement to testify against the second accomplice, he was granted parole eligibility after fifteen years, and prison authorities agreed to transfer Petitioner to an off-island facility. (*Id*.)

2

Pursuant to an intergovernmental agreement (Doc. 2, Ex. B) between Guam and the United States Bureau of Prisons ("BOP"), Petitioner was transferred from Guam to the custody, housing , and safekeeping of the BOP as a Guam state boarder.  (Doc. 2 at 2.)  Petitioner does not dispute the propriety of his transfer, but he challenges his prisoner classification established by the BOP.  Specifically, he claims that:

> Petitioner is presently imprisoned . . . pursuant to an illegal and impermissible application of BOP [Program Statement ("PS")] 5100.07 for the following reasons:

> i.   BOP officials have no jurisdictional authority to place restrictions and additional risks [sic] on state sentence, by applying BOP PS 5100.07, Security Designation and Custody Classification Manual, i.e., [Public Safety Factors] application (security increase), etc., herein.

> ii.   BOP officials have no jurisdictional authority to place contract territorial inmates in third party custody, i.e., [Community Corrections Center] (halfway house) placements.

> iii.   BOP officials have no jurisdictional authority to deny qualified Lower Security Level transfer, based on applications of [Public Safety Factors], contrary to parole "liberty interest" entitlement and rehabilitative objectives, without due process of law.

3

(Doc. 1 at 10.)[1]  Petitioner seeks an order "removing BOP PS 5100.07 applications of: 1) [Public Safety Factors]; 2) 'Exception Case' classifications; 3) 0-25% Time Served; 4) 540 Months to Release; and 5) Denial of Lower Security Transfer . . . ."  (Doc. 2 at 4.)  He also seeks injunctive relief precluding future application of  P.S. 5100.07 by the BOP.  Respondent claims that: (a) Petitioner's prisoner classification has been appropriately and correctly computed by the BOP, (b) Petitioner has no right to transfer to another facility, and (c) Petitioner has no liberty interest in parole.  The court agrees.

## III.  Discussion

### A.  Jurisdiction

Petitioner "is seeking a Writ of habeas Corpus and Review of Agency Action, under the Administrative Procedure Act ("APA") . . . ."  (Doc. 2 at 1.)  As they relate to habeas relief, this court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241.  "Section 2241 is the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the

---

[1]Petitioner also states that he is "presently challenging the denials [of parole]. . . by the Guam territorial parole board . . . ."  (Doc. 2 at 2.)  However, this challenge is being pursued in a separate habeas petition filed in the Superior Court of Guam (*See* Doc. 2, Ex. E), and the issue will not be addressed in this action.

execution of his sentence." *Id*. A habeas petition filed in the district where the petitioner is confined provides a remedy to challenge the effect of events subsequent to imposition of his sentence, *Gomori v. Arnold*, 533 F.2d 871, 874-75 (3d Cir. 1976), and Petitioner may properly invoke § 2241 in the instant case to challenge the BOP's calculation of his prisoner classification.

Under the APA, a reviewing court is required to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). To conclude that the agency action was not arbitrary and capricious, the court must review the record available to the agency, and "must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment . . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The Court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). Therefore, this court must determine whether the BOP has considered appropriate factors, and whether the determination was supported by the record for the habeas analysis as well as the review under the APA.

5

**B.  Computation of Prisoner Classification**

The BOP has authority to establish Petitioner's custody classification while he is a state boarder in a BOP facility.  Under the provisions of 18 U.S.C. § 3621(b), the BOP is charged with the responsibility to designate the place of imprisonment of **each prisoner committed to its custody**, taking into account, *inter alia*, the history and characteristics of the prisoner.  18 U.S.C. § 3621(b).  Pursuant to this authority, the BOP has promulgated Program Statement 5100.07 ("PS 5100.07"), "Security Designation and Custody Classification Manual," to establish a manual "of policy and instructions for designating and redesignating inmates."  (Doc. 2, Ex. H at 1.)  "The intent of the Security Designation and Custody Classification system is to provide staff an opportunity to use professional judgment within specific guidelines."  (*Id*. at 4.)

When determining custody classifications, the BOP assigns various Public Safety Factors's to inmates because it has determined that "[t]here are certain factors which require increased security measures to ensure the protection of society."  (Doc. 2, Ex. I).  A prisoner's custody classification is reviewed annually, and it may be affected in part due to institutional behavior.  P.S. 5100.07, Ch. 8 at 1.  The Constitution does not confer inmates a liberty interest in retaining or receiving any

6

particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed . . . and is not otherwise violative of the Constitution." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983).

Petitioner challenges the BOP determinations of applicable Public Safety Factors's, 0-25% of time served, 540 months to release, and "Exception Case" classification.  (Doc. 2 at 11.)  Under P.S. 5100.07, the "Greatest Severity" Public Safety Factors shall be applied for an inmate whose current offense involves any robbery, assault, homicide or voluntary manslaughter.  Since Petitioner was involved in the murder of a corrections officer, this classification is appropriate, and a prisoner with a "Greatest Severity" Public Safety Factors is properly considered an "Exception Case."  Further, since Petitioner is an inmate for whom no parole date has been established, he is properly scored as having a sentence length of 540 months. *See* Doc. 2, Ex. J.  Moreover, since he is properly scored as serving a term of 540 months with no parole date set, he is appropriately scored as 0-25% percentage of time served. These calculations are consistent with the terms of P.S. 5100.07, and they are fully supported by the information in the record.

The court notes that interference in the classification and custody level determinations of the BOP would involve the judiciary in "the day-to-day functioning

7

of . . . prisons . . . [and] issues and discretionary decisions that are not the business of

federal judges." *Meachum v. Fano*, 427 U.S. 215, 228-29 (1976).  Although

Petitioner presents substantial arguments in support of relief, he has cited no case law,

nor is the court aware of any, that would support relief in this case.  Ultimately,

Petitioner has failed to show that his custody classification violates the statutes or

Constitution of the United States (28 U.S.C. § 2241), and his classification challenge

will be denied.

### C.  Jurisdiction for Community Corrections Center Placement

Petitioner claims that BOP officials have no jurisdictional authority to place

contract territorial inmates in third party custody, i.e., [Community Corrections

Center] (halfway house) placements.  He is mistaken.  As noted previously, the BOP

is charged with the responsibility to designate the place of imprisonment of each

prisoner committed to its custody.  18 U.S.C. § 3621(b).   Under this authority,

Congress has mandated that the BOP "shall, to the extent practicable, assure that a

prisoner serving a term of imprisonment spends a reasonable part . . . of the last 10 per

centum of the term to be served under conditions that will afford the prisoner a

reasonable opportunity to adjust . . . [and this authority] may be used to place a

8

prisoner in home confinement." 18 U.S.C. § 3624(c). Thus, the BOP has authority to place its inmates in third party custody.

### D.  Transfer of Petitioner

Petitioner also challenges denial of "Lower Security Transfer" (Doc 2 at 11), and he claims that he is entitled to receive a transfer to a lower security institution. He is mistaken. It is well-settled that a prisoner has no justifiable expectation that he will be incarcerated in a particular prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983). With respect to federal prisoners, the BOP has the power, pursuant to 18 U.S.C. § 3621(b), "to designate the place of confinement for purposes of serving" sentences of imprisonment. *Barden v. Keohane*, 921 F.2d 476 (3d Cir. 1991). "If the prisoner can be lawfully held in the facility to which he has been transferred, he cannot object to that transfer, even if the transfer results in his being placed in a more restrictive . . . facility." *Ali v. Gibson*, 631 F.2d 1126, 1135 (3d Cir. 1980). "[T]ransfer to less amenable quarters for nonpunitive reasons [is] 'ordinarily contemplated by a prison sentence.' " *Sandin v. Conner*, 515 U.S. 472, 477 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). Since Petitioner has no protected interest in transfer to a different institution, his claim for transfer will be denied.

### E.  Liberty Interest in Parole

Petitioner also seeks injunctive relief, precluding future application of P.S. 5100.07 because it is detrimental to his "liberty interest" in parole.  (Doc. 2 at 4.)  To the extent that Petitioner seeks injunctive preclusion of future application of P.S. 5100.07, his request will be denied for the reasons set forth above.  To the extent that he challenges the denial of parole by the Guam parole board, the court notes that prisoners have no Constitutionally protected liberty interest in parole.  *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence.")  Further, Petitioner is seeking such relief in a separate habeas petition and the issue will not be addressed herein.  *See* Rule 9 of the Rules Governing § 2254 cases in the United States District Courts, 28 U.S.C. foll. § 2254 (1977) (applicable to § 2241 petitions under Rule 1(b)) ("A second or successive petition may be dismissed if the judge finds that it fails to allege new or different grounds for relief . . . .")

10

**IV.** **Conclusion**

Since Petitioner has not demonstrated that the BOP's application of P.S. 5100.07 violated the statutes or the Constitution of the United States, Petitioner's challenge to his custody classification will be denied.  Further, since Petitioner has no protected interest in transfer to another institution, and he has no protected interest in precluding future application of P.S. 5100.07, his petition will be denied.  An appropriate order will issue.

  s/Sylvia H. Rambo
  SYLVIA H. RAMBO
  United States District Judge

Dated:  January 6, 2006.

11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALEXANDER BLANCO KITANO,** | : | |
| | : | |
| **Petitioner** | : | **CIVIL NO. 1:CV-05-0153** |
| | : | |
| **v.** | : | **(Judge Rambo)** |
| | : | |
| **JOSEPH SMITH, Warden,** *et al.*, | : | |
| | : | |
| **Respondents** | : | |

## O R D E R

**AND NOW,** in accordance with the foregoing memorandum, **IT IS HEREBY**

**ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to close this case.

     s/Sylvia H. Rambo
     SYLVIA H. RAMBO
     United States District Judge

Dated:  January 6, 2006.